COMMONWEALTH *vs.* JOSEPH V. BUCKLEY.

Suffolk. December 11, 1908. — January 4, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Obscene Literature.*

At the trial of an indictment under R. L. c. 212, § 20, charging the defendant with selling a book containing obscene, indecent and impure language, manifestly tending to corrupt the morals of youth, it is not necessary for the presiding judge to explain at length to the jury the meaning of the words "obscene," "indecent," "impure" and "manifestly," as these words are not technical terms but are common words to be understood in their common meaning by an ordinary jury.

At the trial of an indictment under R. L. c. 212, § 20, charging the defendant with selling a book containing obscene, indecent and impure language, manifestly tending to corrupt the morals of youth, there is no error in giving to the jury the following instruction : "Obscenity means offensive to morality, to chastity, indecent, nasty. Impure explains itself. Language is offensive, impure and indecent when it manifestly tends to incite in the minds of people susceptible to such influences obscene thoughts, impure thoughts, indecent thoughts," and in giving no further definition of the words of the statute.

At the trial of an indictment under R. L. c. 212, § 20, charging the defendant with selling a book containing obscene, indecent and impure language, manifestly tending to corrupt the morals of youth, the defendant asked the presiding judge to instruct the jury that they had "a right to take into consideration other works of literature, religious, historical, or fiction widely read in the community, the language thereof, and the subjects discussed and the scenes and incidents described therein." The judge refused to give this instruction, and instructed the jury as follows: "It is entirely immaterial whether other books are as bad or worse or better than this. You cannot compare them in that way. You are not trying any book except this, and only such parts of this as the government complains of; and it makes no difference whether you think there are other books in circulation worse than this or not; you are only trying this one." *Held,* that the request was refused rightly and that the language of the charge stated the law on the subject matter of the request accurately and sufficiently.

At the trial of an indictment under R. L. c. 212, § 20, charging the defendant with selling a book containing obscene, indecent and impure language, manifestly tending to corrupt the morals of youth, the defendant asked the presiding judge to rule that the jury had a right to consider the apparent intent and purpose of

the story as a whole, and that whether the language referred to was such as was described in the indictment should be determined by consideration of the contents of the whole book. The judge refused to make these rulings in the form requested and instructed the jury that the defendant was being tried only with regard to such parts of the book as the government complained of, and that it made no difference what the object in writing the book was or what its whole tone was, if the pages complained of and the language set out in the bill of particulars were, in the opinion of the jury, obscene, indecent and impure, and manifestly tended to corrupt the morals of youth. He previously had instructed the jury that they must determine this question "from the language used and from such other parts" of the book as were "necessary to explain that language." *Held,* that the subject of the request was treated sufficiently in the charge, and that there was no error in the instructions given.

INDICTMENT, found and returned in the Superior Court for the county of Suffolk on February 8, 1908, under R. L. c. 212, § 20, charging the defendant with selling a certain printed book entitled "Three Weeks," containing in and upon certain pages certain obscene, indecent and impure language, manifestly tending to corrupt the morals of youth, as set forth in specifications filed by the Commonwealth.

In the Superior Court the defendant was tried before *Brown,* J. Before the jury were impanelled, the defendant filed a motion to quash the indictment, which is referred to in the opinion. The motion was denied by the judge, and the defendant excepted.

The whole of the book was introduced in evidence by the Commonwealth, and the sale of the book was admitted by the defendant. The only other testimony introduced by the government was the reading of the portions of the book specified in the indictment and set forth in the Commonwealth's specifications. The defendant introduced no evidence. At the close of the evidence the defendant asked the judge to rule and instruct the jury as follows:

1. Upon all the evidence the jury should return a verdict of not guilty.

2. Upon all the evidence the language of the parts of the book referred to in the indictment have not been shown to be obscene.

3. The language of the parts of the book described in the indictment is not indecent.

4. The language of the specified parts of the book in evidence is not impure.

5. The portions of the book referred to in the indictment do not manifestly tend to the corruption of the morals of youth.

6. The word "manifestly" as used in R. L. c. 212, § 20, means that the language complained of must be such as obviously, clearly and incontrovertibly would corrupt the morals of youth.

7. The jury must be convinced beyond any reasonable doubt that the book is either obscene, indecent or impure, or manifestly tends to corrupt the morals of youth. If they are not so convinced they should return a verdict of not guilty.

8. The jury should treat the book as a whole, and determine whether the book as a whole is obscene, indecent or impure, or manifestly tends to the corruption of youth.

9. Language is not obscene unless it is calculated to deprave the morals of the ordinary reader or leads to impure purposes.

10. It is not sufficient that the jury be satisfied that the book might seem obscene, indecent and impure to some persons. It is necessary that they be satisfied that it is obscene, indecent and impure to the mind of the ordinary reader into whose hands it would be likely to fall.

12. Obscenity is such indecency as is calculated to promote the violation of the law and the general corruption of morals.

13. Manifestly means that which is clear and requires no proof; that which is notorious.

14. The word "manifestly" as used in the indictment means clear and requiring no proof, incontrovertible, admitting no dispute.

15. The parts of the book referred to in the indictment do not "manifestly tend to corrupt the morals of youth" unless it is so apparent to the jury that it has that tendency as to require no explanation or proof.

16. If the jury believe that there might well be an honest difference of opinion among reasonable men as to whether or not the language of the parts of the book referred to in the indictment tends to corrupt the morals of the youth, they cannot find that such language "manifestly" has that tendency.

17. It is not enough that the jury find that the parts of the book referred to are indelicate or offensive to good taste, or do

not agree with the sentiments of a majority of the people upon the question of morals.

18. The parts of the book referred to in the indictment are not within the provisions of R. L. c. 212, § 20, merely because the jury may believe that they may be indelicate or offensive to the sentiments of a portion or even the whole of the community.

19. The jury cannot find that the parts of the book referred to in the indictment violate the provisions of R. L. c. 212, § 20, merely because they in language or ideas do not accord with the standard of morals of a majority or the whole of the people.

21. The jury have a right to consider the whole of the contents of the book in determining whether the parts specifically pointed out in the indictment come within the provisions of R. L. c. 212, § 20.

22. The jury have a right to consider the apparent intent and purpose of the story as a whole in determining whether the parts referred to come within the description of the indictment.

23. Whether the language referred to is such as is described in the indictment should be determined by consideration of the contents of the entire book.

25. The jury have a right to consider whether the production as a whole is put forward as legitimate literature, and whether the story offers a fairly typical study of life. If they so find, then, even though it may contain episodes which, although within the description of the indictment, taken by themselves are subsidiary to the larger purpose of the book, their verdict should be not guilty.

26. In determining whether the parts of the book referred to in the indictment come within the provisions of R. L. c. 212, § 20, and their probable influence and effect upon the mind and morals of those into whose hands the book may fall, the jury have a right to take into consideration other works of literature, religious, historical, or fiction widely read in the community, the language thereof, and the subjects discussed and the scenes and incidents described therein.

The judge refused to rule and to instruct the jury as requested, and instructed the jury as follows:

"This defendant is charged with selling a certain printed book which contains, in the language of the indictment, certain

obscene, indecent and impure language, manifestly tending to the corruption of the morals of youth. That is the charge upon which he is tried. The issue is very simple. It is for you to determine whether in your opinion this language is obscene, impure or indecent, and manifestly tends to the corruption of youth. The allegation in the indictment that the language is so bad that it ought not to be set out, is not to be considered by you at all, because you have the language itself, and it is from that you must form your conclusions. The language of the pleader is not to be considered by you at all.

" Now, what does the statute mean ? This statute was intended to protect public morals, particularly the morals of that part of the public who, by reason of tender age or any other reason, have minds open, susceptible to influences of this sort. You are to determine from the language used, and from such other parts as are necessary to explain that language, whether that is obscene and impure, and whether it manifestly tends to the corruption of youth.

" Now, language to be obscene — perhaps you know as well without my trying to explain it as you will afterwards — but obscenity means offensive to morality, to chastity, indecent, nasty. Impure explains itself. Language is offensive, impure and indecent when it manifestly tends to incite in the minds of people susceptible to such influences obscene thoughts, impure thoughts, indecent thoughts. Is it language which has a tendency in your opinion to incite impure thoughts in the minds of people into whose hands it may come? Does it corrupt their morals? Does it excite their sexual passions? Now, the fact is not whether it tends to excite those feelings in your minds or not, but whether it has a tendency, a manifest tendency, to excite those feelings in the minds of youths into whose hands it might come. . . . Does it have that tendency ? Does it have a manifest tendency ? Are you able by taking the language and reading it to say that it manifestly tends to corrupt the morals of youth ? If you cannot say that, it makes no difference what anybody else thinks about it, and you must return a verdict of not guilty. If you have reasonable doubt about it you must return a verdict of not guilty.

" It is entirely immaterial whether other books are as bad or

worse or better than this. You cannot compare them in that way. You are not trying any book except this, and only such parts of this as the government complains of ; and it makes no difference whether you think there are other books in circulation worse than this or not ; you are only trying this one. It makes no difference what the object in writing this book was, or what its whole tone is, if these pages that are complained of, the language that is set out in the bill of particulars, is in your mind obscene, impure, indecent, and manifestly tending to the corruption of youth, then you must find a verdict of guilty. It is for you to say. You are to use your own experience and your judgment, acting under the responsibility of your oaths, and return such a verdict as you think you ought to. If you have any doubt, reasonable doubt, as to the effect of this language upon the minds of youth, or anybody else into whose hands it may come, then you must give the defendant the benefit of that doubt."

The jury returned a verdict of guilty, and the defendant was sentenced by the judge to pay a fine of $100 and to stand committed until the sentence was performed. On motion of the defendant, the judge filed a certificate that in his opinion there was reasonable doubt whether the sentence should stand, and ordered that the execution of the sentence be stayed until the further order of the court. The defendant alleged exceptions which were allowed by the judge.

The case was submitted on briefs.

*F. H. Chase & H. A. Guiler,* for the defendant.

*I. Isaacs,* Assistant District Attorney, for the Commonwealth.

HAMMOND, J. This is an indictment under R. L. c. 212, § 20, charging the defendant with selling " a certain printed book " which contained " certain obscene, indecent and impure language, and manifestly tending to the corruption of the morals of youth." The case is before us upon the defendant's exceptions to the overruling of the motion to quash the indictment and to the refusal of the judge to give certain rulings requested at the trial. It is stated in the defendant's brief that the questions raised in the motion to quash, so far as now relied upon, are covered in his request for rulings. We therefore shall consider that motion no further, but shall pass at once to the questions of law which

arise out of the refusal to give the rulings requested at the trial.

There were twenty-six requests, none of which was given in the language asked for, although the law contained in some of them, so far as material to the case, was adopted by the judge in his charge. It seems best to treat the question in a topical way rather than to speak of the requests individually. This is substantially the way in which the questions are discussed upon the defendant's brief.

The defendant strongly contends that the judge should have defined at greater length than he did the terms " obscene," " indecent," " impure " and " manifestly." While it is true perhaps that by illustration or the use of synonyms the judge might have explained more fully the meaning of these terms, still it is to be remembered that they are not technical terms. They are common words and may be assumed to be understood in their common meaning by an ordinary jury. So far as the judge undertook to define we see no error, and we cannot say as matter of law that his failure to define more at length was erroneous in law or prejudicial to the defendant.

It is strongly contended by the defendant that the language complained of is neither obscene nor indecent nor impure, and that it does not manifestly tend to the corruption of the morals of youth ; and in support of his contention the following language is used in his brief :

" The language of those parts of the book specified in the indictment is neither impure nor indecent within the meaning of the statute. No word, sentence or paragraph can be pointed out which can be described by either of these terms. If the statute is to be construed to cover all language which conveys or suggests thoughts of sexual relations, or even illicit intercourse, it will certainly include a great part of what is considered good and decent literature. Indecent and impure language cannot be such as is widely read and openly discussed. The very terms themselves import that matters thus described cannot be openly read or decently discussed ; yet it is submitted that the book in question can be widely and openly read and discussed without causing general corruption of morals or denoting general depravity.

" The language referred to does not manifestly tend to the corruption of youth. It is not sufficient, under this clause of the statute that the language be such as might tend to corrupt the thoughts of the young. It must obviously and incontrovertibly have that tendency. If there is any room for doubt upon that point the statute does not apply. The language of this book is not such that it can properly be said 'manifestly' to tend to corrupt or deprave."

But we think that the case was properly submitted to the jury. It could not be ruled as matter of law that the jury could not find the book within the prohibition of the statute. In prosecutions like this, considerations similar to those thus urged in this case are frequently, if not usually presented, in behalf of the defendant, and they are entitled to consideration. But after all there is a practical side. Doubtless an artist, when looking in his studio upon the model before him, in the figure of a perfectly formed young woman standing completely nude, may be so much under the influence of the aesthetic principles of his profession, and so intent in his wish to copy with perfect exactness the living picture, as not to have one obscene, indecent or impure thought or the slightest sexual desire, but on the contrary he may be perfectly absorbed in the purest feeling of admiration and wonder at the artistic beauty of the creation before him. But it by no means follows that if he should open wide the doors of his studio and fill it with people from the crowded streets, they would be moved by the same lofty and pure feelings. And in passing upon the question whether such an exhibition was obscene or tended to corrupt the morals of youth, a jury would not be justified in considering only the feeling of the artist. They should consider that not every person is so much absorbed in the artistic features, and that the exhibition of such a model may rather arouse in many spectators passions of a merely animal nature.

And so a reader may be so interested in the development of the character of a woman — no matter how wanton — as a merely psychic study, as to read such a book as this without a single impure or unworthy thought. And it may be that the author of this book was in full sympathy with such a state of mind when she wrote it and sent it forth to the reading

public. It may be also that the literary style of the book is such that many a reader finds that to be the most attractive feature; and the thinly veiled allusions to an intense desire for sexual intercourse and to the arts of seduction leading to it and exciting it may be unheeded by him. But such an author cannot expect that the reading public as a whole will so read her production. Descriptions of seductive actions and of highly wrought sexual passion, even when sanctified by what the author has called " love," are very likely to be seen in another light tending towards the obscene and impure. And an author who has disclosed so much of the details of the way to the adulterous bed as the author of this book has and who has kept the curtains raised in the way that she has kept them, can find no fault if the jury say that not the spiritual but the animal, not the pure but the impure, is what the general reader will find as the most conspicuous thought suggested to him as he reads.

The twenty-sixth request was properly refused; and the language of the charge sufficiently and accurately stated the law on the subject matter of this request. Although the twenty-first, twenty-second and twenty-third rulings were not given in their precise language, yet their subject was sufficiently treated in the charge. We see no error in the manner in which the court dealt with any of the requests.

*Exceptions overruled.*