COMMONWEALTH *vs.* JAMES A. DELACEY.

Middlesex. April 3, 9, 1930. — May 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Obscene, Indecent and Impure. Publication. Sale,* What constitutes. *Agency,* Existence of relation. *Entrapment.*

At the hearing by a judge of the Superior Court without a jury of a complaint charging that the defendant "did sell a book containing obscene, indecent or impure language, or manifestly tending to corrupt the morals of youth," it appeared that the book in question was of the character charged; that the defendant was the manager of a book shop; that, while he had not carried the book in stock, he had procured, previous to the time of the sale alleged in the complaint, five copies at $5 each for men who had asked him for the book, and had sold them to these men at $15 a copy; that he did not consider

the book fit for sale and knew what he was putting out; that an investigator for a private association, to procure a copy of the book for purposes of prosecution of the defendant, concealed his identity, deceived the defendant as to his purpose, and gave the defendant an order for the book, which the defendant procured and delivered to the investigator on payment of the purchase price. The defendant was found guilty. *Held*, that

(1) The transaction between the defendant and the investigator constituted a sale: the defendant was not merely an agent of the investigator;

(2) The fact that the defendant of his own volition had made previous sales of the book made inapplicable the doctrine that, because the defendant by persuasion and false representation was lured to commit the offence charged, he could not be found to have intended to commit it;

(3) The conviction was proper.

COMPLAINT, received and sworn to in the Third District Court of Eastern Middlesex on November 1, 1929, charging that the defendant "did sell a book containing obscene, indecent or impure language, or manifestly tending to corrupt the morals of youth."

On appeal to the Superior Court, the complaint by consent of the defendant was heard by *Fosdick*, J., without a jury. Material findings by the judge are stated in the opinion. The defendant was found guilty and alleged exceptions.

*R. C. Evarts & H. Parker*, for the defendant.

*R. T. Bushnell*, District Attorney, for the Commonwealth, submitted a brief.

PIERCE, J. This is a complaint in a district court, under G. L. c. 272, § 28, which reads: "Whoever imports, prints, publishes, sells or distributes a book . . . containing obscene, indecent or impure language, or manifestly tending to corrupt the morals of youth . . . or introduces into a family, school or place of education, or buys, procures, receives or has in his possession any such book . . . either for the purpose of sale, exhibition, loan or circulation or with intent to introduce the same into a family, school or place of education, shall be punished by imprisonment for not more than two years and by a fine of not less than one hundred nor more than one thousand dollars." The defendant was convicted in that court; he appealed to the Superior Court and at the trial there, held without a jury,

was convicted and sentenced to pay a fine and to serve a term of imprisonment in the house of correction. The case comes before this court on the defendant's exceptions to the denial by the trial judge of certain requests for rulings. The bill of exceptions contains everything material to the issues therein involved.

The book, which was introduced in evidence by the Commonwealth at the trial in the Superior Court, was produced at the hearing before the full court for its consideration as if it were a part of the bill of exceptions. The defendant concedes in his brief that whatever the standards of literature may have been in the past or whatever may be the standards in the future "it is clear that according to present standards the book is not fit for publication or circulation." *Commonwealth* v. *Buckley,* 200 Mass. 346. *Commonwealth* v. *Allison,* 227 Mass. 57, 61, 62. On this subject, the conclusion of fact we have reached upon a full reading of this book is in accordance with that of the trial judge, which he formulates as follows: "the book, viewed as a whole, having regard to its significance as an entity, and not merely to certain particular parts of it viewed separately, is obscene, indecent and impure, and manifestly tends to corrupt the morals of youth." *Commonwealth* v. *Buckley, supra.* The several passages of this book when read by themselves alone and out of context also warranted the trial judge in his finding that they are obscene, indecent and impure, and manifestly tend to corrupt the morals of youth, and when so read have these baneful attributes in an even more concentrated degree than when diluted by admixture with the rest of the writing.

The defendant is the manager of a book shop in Cambridge and his customers include literary people and book collectors. He had previously had many requests for copies of the book in question from members of the faculty of colleges, from a member of the legal profession, and from collectors of the author's manuscripts and first editions of his books. The book in question was published in 1928. The defendant never had copies of it on sale. In August, 1929, he procured five copies at $5 each for men who had

asked him for the book, and sold them to these men at $15 a copy. He had never read it through, but was fully familiar with the reviews of it; he knew the substance of it and did not consider the book fit to sell; he knew what he was putting out and could not defend the book.

The circumstances which led to the delivery of the book on the facts reported in substance are as follows: an investigator for the Watch and Ward Society, a private association, in October, 1929, went to the book shop of which the defendant was manager to ascertain if a copy or copies of the book in question were there kept for sale and, if such were the fact, to procure a copy for the purpose of prosecution. He was told by the clerk who waited upon him that the book which he described was not carried in stock; that they did not consider it advisable to carry it in stock; but that if he wanted it they would try to get it if he would give an order, and that the price would be $15. The next day the investigator returned to the shop and told the clerk he would be willing to order the book; he there saw the defendant who said to the clerk "Take his name and address, and we will try to get it for him." He gave as his name his first and middle names. He did not give his full name because he "didn't want them to know or tie . . . [him] up with the Watch and Ward Society." He concealed his connection with it so that the clerk and the manager would go through with the sale.

The talk of the investigator at the first interview with the clerk was to the effect that he was interested in books — he intended to intimate that he was a book buyer and was in that store as an ordinary person really interested in books. He was in fact interested in prohibited literature, with an intent to find out whether the clerk or the manager would sell him a prohibited book. Later in the same month the investigator learned by telephone from the manager that he had received the book, and on October 30, 1929, the book was delivered to him by the clerk on the payment of $15. It is the contention of the defendant that on the facts disclosed in the bill of exceptions there was no sale of the book; that is, that the defendant acted as

an agent in procuring it for the investigator. This contention does not merit serious consideration. The book was procured by the manager for the purpose of a sale to the investigator if that person should elect to take the book and pay the price of it. In nowise does the testimony of the manager show an agreement that he or his clerk should act as a mere conduit in the transfer of title, or that the book when procured should be the property of the investigator subject to a lien for the money which the manager should advance in behalf of his alleged principal.

The contentions upon which the defendant most earnestly relies are found in his requests for rulings numbered "1A" and "2A," which read: "1A. If the court finds that the conception of and the intention to do the acts which the defendant did, did not originate in the defendant's mind or with him but originated in the mind of the complaining witness and were instilled into the defendant's mind by the complaining witness by means of deceitful representations and importunities then the defendant must be acquitted. 2A. If the court finds that the defendant made the alleged sale because of the inducement of an agent or agents of the Watch and Ward Society, and would not otherwise have violated the law, the defendant must· be acquitted." More concisely stated, these requests sought a ruling that the defendant is not guilty because he was entrapped by the agent of the Watch and Ward Society. In support of his contention the defendant cites the cases of *Woo Wai* v. *United States*, 223 Fed. Rep. 412, *Sam Yick* v. *United States*, 240 Fed. Rep. 60, *Peterson* v. *United States*, 255 Fed. Rep. 433, *Butts* v. *United States*, 273 Fed. Rep. 35; 18 Am. L. R. 143, annotation at 146, *Cermak* v. *United States*, 4 Fed. Rep. (2d) 99, to the effect that no valid and binding prosecution can be had upon a clear case of entrapment, and quotes from *Butts* v. *United States*, 273 Fed. Rep. 35 at page 38 the paragraph which reads: "But when the accused has never committed such an offense as that charged against him prior to the time when he is charged with the offense prosecuted, and never conceived any intention of committing the offense prosecuted, or any

such offense, and had not the means to do so, the fact that the officers of the government incited and by persuasion and representation lured him to commit the offense charged, in order to entrap, arrest, and prosecute him therefor, is and ought to be fatal to the prosecution, and to entitle the accused to a verdict of not guilty."

Assuming, without decision, that the doctrine of entrapment as above stated is not limited to cases where the entrapment is done or procured to be done by public officers, we think the facts in this case do not show that the defendant within the principle decided was not one who prior to the offense charged had never conceived any intention of committing the offense prosecuted or any such offense in violation of G. L. c. 272, § 28. Indeed the evidence of the defendant himself, that, knowing the nature of the publication, he had procured and sold on five different occasions to five different individuals a copy of the book in question, warranted the trial judge in finding that the defendant had the intention to do what he did do without the allurement of anything beyond a desire for gain from the sale of the book in question and other books, and that he was not induced to sell this book by any decoys or false allurements of the agent of the Watch and Ward Society. In the United States courts the law applicable to the facts which are here admitted by the defendant is stated in the opinion in *Butts* v. *United States,* 273 Fed. Rep. 35, at page 37, to be as follows: "It is not denied that, in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the accused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution." *Price* v. *United States,* 165 U. S. 311, 315. *Grimm* v. *United States,* 156 U. S. 604, 610. *Goode* v. *United States,* 159 U. S. 663, 669. *Andrews* v. *United States,* 162 U. S. 420, 423. See in accord *Commonwealth* v. *Graves,* 97 Mass. 114; *Regina* v. *Carlile,* 1 Cox C. C. 229. See also to the effect that the competency of evidence in this Commonwealth depends on

its inherent, probative value rather than on outside circumstances. *Commonwealth* v. *Donnelly*, 246 Mass. 507. *Commonwealth* v. *Wilkins*, 243 Mass. 356. *Commonwealth* v. *Welch*, 163 Mass. 372.

We find no error in the refusal to give the requested rulings.

*Exceptions overruled.*