COMMONWEALTH *vs.* JOHN G. HARVARD.

Worcester. October 7, 1969. — December 3, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Narcotic Drugs. Sale*, What constitutes, Sale of narcotic drug. *Entrapment. Evidence*, Certificate of Department of Public Health analyst, On cross-examination, Judicial discretion. *Constitutional Law*, Confrontation.

Evidence merely that a defendant indicted for selling marihuana in violation of G. L. c. 94, § 217, introduced a buyer of marihuana to a seller thereof and persuaded him to sell it to the buyer, and, while standing between the buyer's and the seller's automobiles, was handed the marihuana by the seller and handed it to the buyer and was given the money therefor by him and passed it to the seller did not warrant the defendant's conviction on that indictment [456]; such evidence, however, warranted the defendant's conviction upon an indictment for possession of marihuana in violation of c. 94, § 205 [457–458].

Evidence merely that a defendant indicted for selling marihuana in violation of G. L. c. 94, § 217, introduced a buyer of marihuana to a seller thereof, telling the seller that the buyer "would like to have some grass," and entered the buyer's automobile after the buyer showed the defendant marihuana purchased from the seller and paid the seller therefor did not warrant the defendant's conviction. [458]

The defence of entrapment is a part of Massachusetts criminal law. [458–459]

At the trial of indictments for violations of narcotic drug laws with respect to marihuana on specified dates, evidence of the conduct of a State police officer as an undercover agent with respect to importuning the defendant on numerous occasions prior to such dates to commit the violations, together with evidence of the defendant's predisposition to become involved in the illegal drug traffic, left it for the jury to determine, following the judge's instructions on the law of entrapment to which the defendant took no exception, whether the officer led an innocent person into a career of trafficking in narcotics on which he otherwise would not have embarked, and there was no error in the denial of the defendant's motion for a directed verdict based on entrapment. [460]

At the trial of indictments for violations of the narcotic drug laws, there was no violation of the defendant's constitutional right of confrontation in the admission in evidence of certificates by an analyst of the Department of Public Health, executed in accordance with G. L. c. 111, § 13, that the contents of plastic bags, submitted for analysis under § 12, were marihuana. [461–462]

At the trial of indictments for violations of the narcotic drug laws at which the defendant on direct examination, presumably on the issue of entrapment, testified that a State police undercover agent tried to get him to procure marihuana, there was no error in permitting the prosecution on cross-examination to elicit from the defendant that he never went to a police station or police officer and said anything. [463]

THREE INDICTMENTS found and returned in the Superior Court on September 24, 1968.

The cases were tried before *Beaudreau, J.*

*Conrad W. Fisher* for the defendant.

*Anthony N. Compagnone,* Assistant District Attorney, for the Commonwealth.

SPALDING, J. The defendant was convicted on three indictments, two of which charged a sale, and one possession, of marihuana. G. L. c. 94, §§ 205, 217. The defendant appealed, the trial having been conducted pursuant to G. L. c. 278, §§ 33A–33G. The defendant assigns as error the refusal of the judge to direct verdicts of not guilty on all

indictments and five rulings on evidence, four of which have been waived.

There was evidence of the following: As a result of a complaint from citizens concerning narcotic activities in Webster, Officer Martin of the State police was sent into the Webster area in April, 1968, as an undercover agent. Martin telephoned the defendant on April 24, 1968, and asked him to obtain some marihuana for him; this request was repeated on four other occasions prior to May 17. The defendant told Martin that he could not get it because it was "scarce." Martin saw the defendant or communicated with him by telephone almost daily until May 17, 1968.

On May 17, the defendant and a person named Gawle introduced Martin to one Zacharo, and a transfer of marihuana took place in the following manner. Martin's car and Zacharo's car were parked parallel to each other and three or four feet apart; the defendant was standing between the cars. During a conversation among the four, Gawle and the defendant persuaded Zacharo to sell marihuana to Martin. Zacharo thereupon handed a plastic bag of marihuana to the defendant who passed it to Martin in Martin's car. Martin then gave $15 to the defendant who passed it to Zacharo. There was no evidence that the defendant received any of the proceeds of the sale.

On June 5, Martin again asked the defendant if he could get him some marihuana, and the defendant replied he could, as "a new connection," whom he called "the Mexican," had just come into town. Later that day Martin and the defendant located "the Mexican" (whose name was Castro). The defendant introduced Martin to Castro, stating that Martin was a friend who "would like to have some grass."[1] Castro told Martin that he could get him some; he then entered Martin's car and they drove off to obtain it. The defendant did not go with them. A few minutes later they returned, and the defendant asked Martin "if . . . [he] did all right." Picking up a bag, Martin replied, "He came

---

[1] "Grass" according to the testimony means marihuana "in the language of the street."

across with this marijuana here." Martin paid Castro $20. The defendant then entered Martin's car, remarking, "I've had some of that, it's real good."

There was no evidence that the defendant received any consideration from the transaction just described. Apart from the transactions of May 17 and June 5, on which the two indictments charging sales are based, Martin never saw the defendant buy or sell any drug. On one occasion prior to the May 17 transaction Martin was with the defendant when a person called "Wes" asked him if he had any "grass." Upon being told by the defendant that he had none, "Wes" asked him if he would like some "speed."[1] Martin declined but the defendant took some and sniffed it. Immediately thereafter the defendant went with Martin to Southbridge where the defendant talked with two persons concerning the purchase by the defendant of $400 worth of LSD (a hallucinogen) from a dealer in Northampton, but there was no evidence that anything further was done. On another occasion prior to the May 17 transaction the defendant told Martin that he could get some opium for him. The defendant thereafter introduced Martin to Gawle who sold him a substance purporting to be opium and for which Martin paid $10. On analysis this proved to be an unidentifiable nonnarcotic substance.

At the close of the evidence the defendant moved for a directed verdict of not guilty on each of the indictments charging a sale and on the indictment charging possession. The motions were denied, subject to the defendant's exceptions. These exceptions are the subject of assignment of error no. 17. The motions are grounded on the contention that the evidence would not warrant conviction that the defendant committed the offences charged, that is, a sale of marihuana on May 17 and June 5 and possession of marihuana on May 17. The defendant also seeks to support his motions on the ground that the defendant was, as matter of law, entrapped.

---

[1] "Speed" apparently is, in the jargon in the drug world, a term for methamphetamine, a stimulant.

1. We consider first whether there was sufficient evidence to warrant a conviction on the indictment charging a sale of marihuana on May 17. We are of opinion that there was not. The record shows that the defendant facilitated an illegal sale by introducing a willing buyer and seller and by aiding in the physical transfer of drug and money. There is nothing to show that the defendant had any financial interest in the transaction, or was employed by the seller to promote sales. Rather than prosecute him as an accessory, or one who has delivered, furnished, or exchanged a drug, all of which acts are proscribed by our statutes, the Commonwealth has charged him with unlawful sale.

Section 217 of c. 94 (as appearing in St. 1960, c. 204, § 3), imposes a minimum term of five years imprisonment for "[w]hoever sells . . . any narcotic drug, other than heroin except as provided by the narcotic drug law." Section 197 (as appearing in St. 1957, c. 660, § 1) "unless the context otherwise requires" defines "sale" as including "barter, exchange or gift, or offer therefor, and *each such transaction* made by any person, whether as principal, proprietor, agent, servant or employee" (emphasis added). It has been urged, without success, in the New York and Federal courts under statutes similar to those under consideration that conduct of the sort in which the defendant engaged would support a conviction for selling.[1] In *People* v. *Branch*, 13 App. Div. 2d (N. Y.) 714, the court said: "There was nothing in the evidence to show that the defendant had entered into a conspiracy with the vendor of the narcotics to engage in the selling of narcotics or that the defendant had acted in the transaction in any way as the agent of the vendor or on her behalf, or that he was associated in any way with the enterprise of the vendor or that he had any personal or financial interest in bringing trade to her . . . . One who acts solely as the agent of the buyer cannot be convicted of the crime

---

[1] "Any person who shall barter or exchange with or sell, give or offer to give to another any narcotic drug . . . ." 39 McKinney's Consol. Laws of N. Y. Anno. § 1751. "It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs." 26 U. S. C. 4705 (a) (1964). See also 26 U. S. C. 4724 (a) (1964).

of selling narcotics." To the same effect are: *People* v. *Buster*, 286 App. Div. (N. Y.) 1141; *People* v. *Fortes*, 24 App. Div. 2d (N. Y.) 428.

In *United States* v. *Sawyer*, 210 F. 2d 169 (3d Cir.), the court reached a similar conclusion in reversing a conviction for the unlawful selling of heroin where the trial judge had not instructed the jury on the difference between dealing with a purchaser as seller and acting for him as procuring agent. There the court said that if "the defendant undertook to act in the prospective purchaser's behalf rather than his own, and in so doing purchased the drug from a third person with whom he was not associated in selling, and thereafter delivered it to the buyer, the defendant would not be a seller." Page 170. A similar result was reached in *United States* v. *Moses*, 220 F. 2d 166 (3d Cir.), where, although the defendant facilitated the purchase by introducing the buyer to the seller and vouching for him he could not be convicted of selling. Other cases of like tenor are: *Henderson* v. *United States*, 261 F. 2d 909, 912 (5th Cir.); *Cofield* v. *United States*, 263 F. 2d 686, 690 (9th Cir.).

Our attention has been directed to decisions of the Supreme Court of Illinois interpreting a somewhat similar statute that would hold that the defendant's conduct here constituted a sale.[1] The theory of these cases is that "agent" as used in the definition of sale includes any agent or go-between, whether for the buyer or seller, who participates in or facilitates an illegal drug transaction. It appears that the Illinois statute is worded somewhat more broadly than § 197. But to the extent that those decisions are contrary to what is here decided, we are not disposed to follow them. The defendant's motion for a directed verdict on the indictment charging a sale on May 17 ought to have been granted.

2. One of the indictments charged the defendant with possession of marihuana on May 17. The defendant argues that this indictment should not have been submitted to the jury. Admittedly, the defendant was in possession of

[1] *People* v. *Shannon*, 15 Ill. 2d 494. *People* v. *Aldridge*, 19 Ill. 2d 176.

Commonwealth *v.* Harvard.

marihuana on May 17 when Zacharo handed the plastic bag containing it to the defendant who in turn passed it. to Martin. The defendant argues that such fleeting, momentary contact with the drug does not constitute the possession proscribed by the statute. We disagree. At the moment the defendant received the drug he had the control and power to do with it what he willed. In this case he chose to hand it immediately to Martin rather than hold it longer, keep it himself, or otherwise deal with it. Possession ought not to depend on the duration of time elapsing after one has an object under his control. A standard based on duration would be exceedingly difficult to apply. Authorities in other jurisdictions support this conclusion. See *Peachie* v. *State,* 203 Md. 239; *State* v. *Brown,* 235 Md. 401; *Sutton* v. *State,* 170 Texas Crim. App. 617; annotation, 91 A. L. R. 2d 810, 812.

3. The defendant also argues that there was not sufficient evidence to support a conviction under the indictment charging a sale on June 5. For the reasons stated in point 1 of the opinion the defendant's conduct did not warrant a conviction for unlawful sale under § 217 and it was error to submit this indictment to the jury.

4. Apart from the defendant's contention that he was entitled to directed verdicts on the grounds discussed in points 1, 2, and 3 of this opinion, the defendant urges that the evidence shows that he was entrapped as matter of law and that his motions for directed verdicts should have been granted on this ground.

It would appear that the only decision of this court where the subject of entrapment has been discussed — and but briefly — is *Commonwealth* v. *DeLacey,* 271 Mass. 327, 331-332. There the court found it unnecessary to determine to what extent, if any, the doctrine would be recognized as a defence. The present case squarely presents the question.

In the Federal courts and in most States, the doctrine is well established.[1] *Sorrells* v. *United States,* 287 U. S. 435.

---

[1] The question has not thus far been presented to the English courts. Williams, Criminal Law, The General Part, 2d ed. § 256.

*Sherman* v. *United States*, 356 U. S. 369. *People* v. *Benford*, 53 Cal. 2d 1. See annotation, 86 A. L. R. 263; Perkins on Criminal Law, 921; 21 Am. Jur. 2d, Criminal Law, §§ 143–144; Am. Law Inst., Model Penal Code, § 2.10 (Tent. draft No. 9). The time has come when we should recognize the doctrine as part of our law. While courts differ somewhat as to the details and rationale of the doctrine (see e. g. majority and concurring opinions in *Sorrells* v. *United States, supra*, and *Sherman* v. *United States, supra*), the general principle has been well stated by Professor Perkins at page 921 in his Criminal Law: "Entrapment, so-called, is a relatively simple and very desirable concept which was unfortunately misnamed with some resulting confusion. It is socially desirable for criminals to be apprehended and brought to justice and there is nothing whatever wrong or out of place in setting traps to catch those bent on crime; what the state cannot tolerate is having its officers, who are charged with the duty of enforcing the law, instigate crime by implanting criminal ideas in innocent minds and thereby bringing about offenses that otherwise would never have been perpetrated."

The judge in the case at bar instructed the jury on the law of entrapment and no exceptions were taken to the charge. Thus the issue was passed on by the jury under instructions which the defendant apparently deemed to be satisfactory. But the defendant says that the court should have gone further and directed verdicts on all indictments because his defence of entrapment had been established as matter of law.

In determining whether entrapment has been established, "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman* v. *United States*, 356 U. S. 369, 372. Artifice and stratagem may be employed to bring to book those engaged in crime. *Sorrells* v. *United States*, 287 U. S. 435, 441. There are certain crimes, of which the narcotics traffic is clearly one, which are committed secretly. Without undercover work on the part of the police few violations would be discovered.

When Officer Martin went into the Webster area to investigate the narcotic traffic he may have had private reasons for approaching the defendant for marihuana but on the evidence presented in court he had no probable cause. Nevertheless, as was said by the Court of Appeals for the First Circuit, "where the inducement exercised was not 'shocking or offensive per se' the only issue is whether the defendant was sufficiently predisposed, so that while the particular offense was brought about by the government agent, the defendant's criminality, or 'corruption,' was not." *Waker* v. *United States*, 344 F. 2d 795, 796.

We are of opinion that the conduct of Officer Martin was not so "shocking or offensive per se" as to taint the prosecution under the doctrine of entrapment, at least not as matter of law. Nor can it be said that the evidence concerning the defendant's predisposition to become involved in the drug traffic was so lacking as would justify a conclusion as matter of law that he was "corrupted" by Martin's conduct. As stated above, on several occasions prior to the offences charged in the indictments, there were incidents which were hardly consistent with one having no connection with narcotics or similar substances. When first asked by Martin to procure marihuana, the defendant showed some knowledge on the subject when he replied that it was "scarce." When asked by a person named "Wes" if he had any "grass" the defendant replied in the negative, but accepted some "speed," and sniffed it; Martin then drove with him to Southbridge where the defendant talked with two persons about a possible purchase of $400 worth of LSD, a narcotic drug; on another occasion the defendant told Martin that he could get some opium and introduced him to Gawle who sold him a substance purporting to be opium. On the basis of this evidence it was for the jury, not the court, to say whether Martin was leading an innocent person into a career of trafficking in narcotics on which otherwise he would not have embarked. The defendant places great reliance on the evidence elicited from Martin on cross-examination to the effect that Martin importuned the defendant on numerous

occasions prior to May 17 before any of the transactions which are the subject of the indictments occurred. Concerning a similar contention the language of Chief Judge Aldrich in *Waker* v. *United States, supra,* at page 797 is pertinent: "Although the . . . defendant had to be 'played with' a bit, the jury was warranted in concluding, to continue in the vernacular, that he was willing to take the bait."

5. Two plastic bags purporting to contain marihuana were put in evidence by the Commonwealth. There was evidence that they had been taken to the Department of Public Health pursuant to G. L. c. 111, §§ 12 (as appearing in St. 1943, c. 331, § 1) and 13 (as amended through St. 1943, c. 331, § 2), for analysis. Certificates of the analysis, which showed that the contents of the bags were marihuana, were admitted in evidence under § 13, subject to the defendant's exceptions. These certificates were executed in accordance with the provisions of § 13.

Section 12 provides that the department shall make a chemical analysis of narcotic drugs "submitted to it by police authorities . . . provided, that it is satisfied that the analysis is to be used for the enforcement of law." Section 13 provides that the department analyst "shall . . . furnish [to any police officer] a signed certificate, on oath, of the result of the analysis" provided for in § 12, and the "presentation of such certificate to the court by any police officer . . . shall be prima facie evidence that all the requirements and provisions of . . . [§ 12] have been complied with."

After providing that the certificate be under oath and the jurat contain a statement that the subscriber is an analyst of the department, § 13 states, "When properly executed . . . [the certificate] shall be prima facie evidence of the composition and quality of the narcotic or other drug . . . analyzed, and the court shall take judicial notice of the signature of the analyst . . . and of the fact that he is such."

The defendant's objection to the admission in evidence of the two certificates is that § 13 which makes them admissible and prima facie evidence "that all the requirements

and provisions of . . . [§ 12, pertaining to chemical analysis] have been complied with" is unconstitutional in that it violates the defendant's right of confrontation guaranteed under the Constitutions of the Commonwealth and of the United States. See art. 12 of the Declaration of Rights, and the Sixth and Fourteenth Amendments of the Constitution of the United States. See also *Pointer* v. *Texas*, 380 U.S. 400.

This question is not new. It was presented to this court nearly fifty years ago in *Commonwealth* v. *Slavski*, 245 Mass. 405, where a somewhat similar statute relating to analysis of intoxicating liquor was challenged on identical grounds but without success. The *Slavski* case, which has become a leading case on this question, contains an able and exhaustive discussion of the subject by Chief Justice Rugg. Further discussion would be redundant. It is urged that the present statute differs from that in the *Slavski* case, because the manner in which the analysis is to be made is not specified. The statute involved in the *Slavski* case did not specify the manner in which the analysis was to be conducted. It did state that the certificate was to show "the percentage of alcohol by weight at sixty degrees Fahrenheit" but this was not a specification of how the "composition and quality of the liquors" were to be determined. Under that statute, as here, it was assumed that the analyst of the department had the necessary knowledge to perform the analysis. It is further urged that the analyst under § 13 is required to do more than merely make a test of the substance analyzed; he is required to make a legal determination that the substance analyzed is a narcotic drug as defined in G. L. c. 94, § 197. Thus, it is argued, he should be subject to cross-examination as to his understanding of the statutory requirements and the quantity of the drug contained in the substance analyzed. But the statute here, as in the *Slavski* case, makes the analyst's certificate only prima facie evidence of the quality and substance. If the defendant doubted the correctness of the certificates in any respect it was open to him to rebut them, but he did not pursue this course. The judge rightly admitted the certificates. Such

differences as there are between the statute here and that involved in the *Slavski* case are not such as to call for a different result. We see no reason to doubt the correctness of the *Slavski* decision and it is controlling.

6. A question of evidence remains, which is the subject of the defendant's fourteenth assignment of error. The defendant objected to a question put to him on cross-examination, but in context we think that the question was within permissible limits.[1] "How far the cross-examination of a witness may be relevant to the issue on trial must be left largely to the sound discretion of the court; such questions are not open to revision unless substantial rights of a party are clearly shown to have been prejudiced." *Commonwealth* v. *Corcoran*, 252 Mass. 465, 486.

7. With respect to indictment Nos. 32,453 and 32,454 charging the sales on May 17, 1968, and June 5, 1968, respectively, the judgments are reversed and the verdicts are set aside. The judgment on the indictment charging possession (No. 32,452) is affirmed.

*So ordered.*

---

[1] The question was put in this context. It was brought out on the defendant's direct examination, presumably on the issue of entrapment, that Officer Martin as a pretended friend had made numerous telephone calls to the defendant to induce him to procure marihuana. In this setting the prosecutor asked the following question over the objection and exception of the defendant: Q. "And you say that : . . [Martin] was trying to get you to violate the law. Did you ever go to a police station, to a police officer, and say anything?" The answer to the question was, "No."