Scott William JONES, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15991.

Court of Criminal Appeals of Oklahoma.

Jan. 6, 1971.

Rehearing Denied March 8, 1971.

Raymond Burger, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in error, Scott William Jones, hereinafter referred to as defendant, was convicted in the District Court of Oklahoma County, Case No. CRF–69–2602, of sale of marihuana. Judgment and sentence was imposed on March 6, 1970, with punishment fixed at 18 month imprisonment and this appeal perfected therefrom. The issue requiring determination is the sufficiency

of the evidence at both the preliminary and the trial.

Defendant was initially charged in Case No. CRF–69–2351 with acting conjointly and together with Meredith Wade Morris in the sale of marihuana on August 14, 1969, to John Henry Kane. Preliminary examination was held for defendant and Morris on October 20, 1969, before Judge Jack C. Thorne. The court heard testimony from Kane, an undercover police officer; George A. Burns, a police narcotics officer; and Brian L. Tipton, chemist for the Oklahoma Bureau of Investigation. The Court withheld its ruling until October 22, when it held Morris for trial on the charge and dismissed the defendant.

The State refiled the same charge against defendant as Case No. CRF–69–2602, which came on preliminary examination before Judge Robert L. Berry on November 25, 1969. Defendant's motions to dismiss by virtue of the dismissal at the previous preliminary were overruled. The State offered the same three witnesses, who gave the same testimony and no additional or new evidence was offered. At the close of the preliminary defendant was held for trial on the charge. It is contended that this procedure is improper, and we agree.

In Nicodemus v. Disrtict Court, Okl.Cr., 473 P.2d 312 (1970), this Court held that although "dismissal of a prosecution at a preliminary examination is not a bar to further prosecution for the same offense," the examining magistrate's ruling on the sufficiency of the evidence is "binding and final at the preliminary examination." We further critically viewed a practice of "shopping" among magistrates by refiling a charge until a favorable ruling is obtained and said:

> "Without the production of additional evidence, or the existence of other good cause to justify a subsequent preliminary examination, such a practice can become a form of harassment which may violate the principle of fundamental due process and equal protection of the law * * * "

When this Court handed down the *Nicodemus* opinion, it was presumed the magistrates, under judicial reorganization, would exercise the judicial courage to make proper application of the law without fear of reprisal from some "Phantom Force". However, it appears this Court is compelled to reiterate the law in more intricate detail.

■ When an examining magistrate rules that the evidence offered by the State is insufficient to hold the accused over for trial on the charge, such a ruling is binding and final on him and any other examining magistrate unless the State produces additional evidence or proves the existence of other good cause to justify a subsequent preliminary examination. If the State has sufficient evidence to bring an accused to trial, it should be prepared to offer such at one preliminary examination and not rely on bolstering its case at a subsequent preliminary examination, if necessary. It is dilatory to present evidence on an installment basis at different preliminaries. Let the State present its case at the preliminary and be done with it. If it is insufficient, then the prosecution is at an end unless new evidence becomes available or other good cause is shown. Not only is refiling without cause unnecessarily burdensome to our overcrowded courts, but it may constitute harassment of an accused.

Therefore, when a magistrate at a preliminary examination rules the evidence insufficient to hold the defendant for trial, neither that magistrate nor any other magistrate should entertain another filing against the same defendant for the same offense unless the State makes an offer of additional evidence or proves other good cause to justify another preliminary examination. Additional or new evidence does not mean that which was known to the State at the time of the first preliminary or which could have been easily acquired.

■ Upon refiling a prosecution, the State must bring it before the same magistrate who dismissed the charge, or in his absence, another magistrate setting forth the dismissed case number, date, magis-

trate, and the additional evidence or other good cause to be offered.

Furthermore, upon refiling a prosecution under these circumstances, the magistrate at the subsequent preliminary examination must be convinced that additional competent evidence has been offered which requires re-examination of the prior dismissal before that ruling can be set aside. The magistrate at a subsequent preliminary examination for the same defendant on the same charge should not consider the matter anew as on first impression as a prior dismissal is binding and final until overcome by additional evidence.

■ In the instant case, we find that the examining magistrate properly dismissed the prosecution at the initial preliminary examination; there being insufficient evidence to hold defendant for trial on the charge. The evidence at the second preliminary examination was substantially the same and there was no additional evidence or other good cause to justify another preliminary examination. Nor was there sufficient evidence to hold defendant over for trial. The magistrate at the second preliminary was therefore bound by the prior ruling of dismissal.

We next address our attention to the sufficiency of the evidence at the trial. It appears that on August 14, 1969, undercover Officer Kane and a police informer, D. E. Stoltz, were seated in Kane's car in a parking area fronting several businesses, which included a tavern and record shop frequented by young people. According to the State's version of the facts, defendant emerged from a crowd of young people and inquired if Kane and Stoltz wanted to buy some marihuana. They testified defendant got into the car and discussed a possible purchase. Defendant did not have any marihuana, but left the car, went to the group of young people, and returned with Morris. Morris said he had some marihuana and then discussed price with Kane and Stoltz. During this conversation, according to the officers, defendant left and was not seen again. Morris agreed on a price and took $20 from Kane. Morris told the officers to drive into the alley behind the businesses to pick up the marihuana. Subsequently Kane and Stoltz drove into the alley where Morris came up to Stoltz's side of the car. Stoltz and Morris went behind the car where they smoked a joint (marihuana cigarette) and transferred the baggie of marihuana. After awhile Stoltz and Morris came around to Kane's side of the car, whereupon Kane emerged and Morris introduced himself.

Under the State's version defendant was not present when the money was exchanged, or in the alley when the marihuana was transferred. Nor was there any evidence defendant received any benefit from the sale, nor that defendant and Morris had a prearranged plan.

Defendant, an eighteen year old university scholarship student, testified that he did not offer to sell any marihuana and that he did not contact Morris concerning such a sale. Three witnesses present at the time of the events and the defendant testified that as defendant emerged from the record shop Stoltz called the defendant over to the car. Stoltz asked defendant if he knew where he could buy some marihuana. Defendant said no, and returned to his three friends with whom he talked awhile and left with one of the witnesses. According to their testimony the defendant did not get into Kane's car. None of these witnesses saw defendant talking with Morris or even saw Morris on the night in question.

Another witness, Cindy Lynes, testified she had been dating Kane and upon seeing him and Stoltz in the parking lot, entered the back seat of the car. While there Stoltz returned to the car and asked if Kane wanted to buy some marihuana. Kane then drove the car including Stoltz and the witness into the alley. Kane then gave Stoltz money for the marihuana. Morris came up to Stoltz's side and the two went behind the car. Witness Lynes did not see what happened behind the car, but after awhile Morris and Stoltz came around to Kane's

side of the car. Kane emerged and Morris and Kane introduced themselves.

This record reveals the evidence was wholly insufficient to support a conviction of the defendant for sale of marihuana as the necessary elements were not proven. There was no evidence defendant had possession or control over the marihuana involved. Not only was defendant separated in time and place from the actual transaction, but the connection between defendant and the seller was not proven. Accepting the State's version of the facts, rendered doubtful in view of a preponderance of the evidence, there was no proof of arrangement or defendant's interest in the sale.

 Although by statute in Oklahoma, one who "aids and abets" is a principal in a crime, a conviction cannot be obtained if there is "no proof of a conspiracy or prearranged plan" between the alleged abettor and the one who actually commits the crime. Anderson v. State, 66 Okl.Cr. 291, 91 P.2d 794 (1939). Absent proof of conspiracy, a conviction cannot be sustained as shown in several applicable decisions.

In Commonwealth v. Harvard, 253 N.E. 2d 346 (Mass.1969), the defendant was contacted by an undercover agent about obtaining some marihuana. After several such contacts, the defendant introduced the undercover agent to one Zacharo. The agent's car and Zacharo's car were parked parallel to each other and three or four feet apart with the defendant standing between the cars. "Defendant persuaded Zacharo to sell marihuana to Martin [the undercover agent]. Zacharo thereupon handed a plastic bag of marihuana to the defendant who passed it to Martin in Martin's car. Martin then gave $15 to the defendant who passed it to Zacharo. There was no evidence that the defendant received any of the proceeds of the sale." 253 N.E.2d at 347.

Upon these facts the Supreme Court of Massachusetts held the trial court erred in not granting a motion for a directed verdict as the evidence was insufficient to convict for sale of marihuana. The court reversed not withstanding the Massachusetts statute defining "sale" as including "barter, exchange or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee." The court held:

> "Defendant facilitated an illegal sale by introducing a willing buyer and seller and by aiding in the physical transfer of drug and money. There is nothing to show that the defendant had any financial interest in the transaction, or was employed by the seller to promote sales." 253 N.E.2d at 348.

The defendant in the above case was far more involved in the transaction than the defendant in the case at bar where there is no evidence defendant had any financial interest in the transaction, was employed to promote sales, nor that he aided in the physical transfer of drug or money.

Under similar facts several decisions in different jurisdictions have reversed convictions for sale of drugs. In People v. Branch, 13 A.D.2d 714, 213 N.Y.S.2d 535, the court said:

> "There was nothing in the evidence to show that the defendant had entered into a conspiracy with the vendor of the narcotics to engage in the selling of narcotics or that the defendant had acted in the transaction in any way as the agent of the vendor or on her behalf or that he was associated in any way with the enterprise of the vendor or that he had any personal or financial interest in bringing trade to her. * * * One who acts solely as the agent of the buyer cannot be convicted of the crime of selling narcotics."

To the same effect are: People v. Buster, 286 App.Div. 1141, 145 N.Y.S.2d 437; People v. Fortes, 24 A.D.2d 428, 260 N.Y.S. 2d 716.

In United States v. Sawyer, 210 F.2d 169 (3rd Cir.), the court reached a similar conclusion in reversing a conviction for the

unlawful selling of heroin. There the court said:

"[If] defendant undertook to act in the prospective purchaser's behalf rather than his own, and in so doing purchased the drug from a third person with whom he was not associated in selling, and thereafter delivered it to the buyer, the defendant would not be a seller." 210 F.2d at 170.

A conviction for selling narcotics was reversed with directions to acquit in Adams v. United States, 220 F.2d 297 (5th Cir. 1955), where a Texas defendant obtained narcotics for a police informer:

"All of the evidence was quite consistent with [defendant's] acting only as a purchasing agent or messenger instead of as a seller * * * nor was there any evidence that [defendant] profited in any way from the transactions or was associated with her 'connection' in selling narcotics * * *. The verdict of guilty of the offense of selling heroin must have been based upon speculation, and the judgment should have directed a verdict of acquittal."

United States v. Moses, 220 F.2d 166 (3rd Cir. 1955), as the instant case, involved a fact situation where the defendant was not present at the time of the transaction. On the day in question defendant merely introduced the prospective buyers to the seller and vouched for them "with the result that the principals accomplished a sale some hours later." The Court held:

"Morei v. United States, 6 Cir., 1942, 127 F.2d 827, a narcotics case, is also instructive. There the court treated as decisive the lack of any community of scheme between the defendant and the principal wrongdoers. Again, it has been a general rule under the prohibition acts, national and state, that one who has acted without interest in the selling cannot be convicted as a seller even though his conduct may in fact have facilitated an illegal sale. See cases collected in Notes, 24 L.R.A.,N.S., 268 and 28 L.R.A.,N.S., 334. Moreover, emphasis on those facts which show collaboration and association is characteristic of judicial analysis in those cases where convictions of aiding and abetting have been sustained. [citations]

"We are satisfied that the absence of any showing of collaboration or association between appellant and Cooper prevents her from being convicted under Section 2 of Title 18 as a guilty participant in Cooper's sale of narcotics." 220 F.2d at 169.

Other cases of like tenor are: Henderson v. United States, 261 F.2d 909, 912 (5th Cir. 1958); Cofield v. United States, 263 F.2d 6686, 690 (9th Cir. 1959).

■ Again, in the instant case, there is no proof of "any community of scheme," collaboration, or association, between the defendant and the seller Morris, nor that defendant had any personal or financial interest in the transaction. There being a total failure to prove the necessary elements to constitute a sale as to the defendant, and no proof of conspiracy or prearranged plan, we hold the verdict of guilty could only have been based upon speculation and the trial court erred in failing to grant a motion for directed verdict of acquittal.

It is a familiar rule of this Court, as stated in Cude v. State, 42 Okl.Cr. 357, 276 P. 240, that:

"To sustain a conviction, it should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty, transcending mere probability or strong suspicion."

Accordingly, judgment and sentence is reversed and remanded with instructions to dismiss.

BRETT, P. J., concurs.

BUSSEY, Judge (dissenting).

I must respectfully dissent from the opinion of my colleague, Judge Nix, for the reason that I feel the evidence of the State, when viewed in the strongest light, is suf-

ficient to establish that defendant and Morris were acting in concert in the sale of the marihuana. While I am in accord with the view that the prosecution should not be permitted to harass a defendant by the repeated filing of preliminary complaints after an examining magistrate has held the evidence insufficient, I am of the further opinion that in treating the magistrate's dismissal as a final order binding on all other magistrates unless the prosecution produces additional evidence, the order of dismissal should be an order reviewable on appeal to the District Court in much the same manner as a defendant has a right to test the sufficiency of evidence offered at preliminary examination by filing a Motion to Quash. In my opinion, the trial court, in reviewing such an order, would be vested with the authority to vacate the order of dismissal in the event that the District Judge is of the opinion that the evidence adduced at the preliminary hearing was sufficient to establish that a crime was committed and that there is prima facie probable cause to believe that the defendant is guilty.

BUSSEY, Presiding Judge, Dissenting to Order Denying Petition for Rehearing.

I must dissent from the Order Denying Petition for Rehearing in the above styled and numbered cause, and express my shock that my two colleagues, realizing that I was on vacation and returning today, would summarily act on a Petition for Rehearing upon which oral argument had been set for March 23, 1971, without consulting me.

I recognize the authority of the majority of the Court to determine the law to be followed in Oklahoma, reserving the right to dissent from the action of the majority in those cases in which I cannot, in good conscience, concur. Since the issues presented in the instant case are of great magnitude that effect substantially the administration of criminal justice in Oklahoma, and since the original opinion was delivered without briefs, I am of the opinion that oral argument would have been of great benefit to the Court in determining whether the original opinion should stand as written, or whether, as I view it, the opposite result

should have been reached. I reiterate my dissent to the opinion as originally written and repudiate the majority opinion in its entirety.