COMMONWEALTH *vs.* RUTH M. MILLER.

Bristol. January 3, 1972. — April 24, 1972.

Present: CUTTER, REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Narcotic Drugs. Entrapment. Regulation. Evidence,* Illegally obtained evidence, Evidence of good cause, Hearsay, Narcotic drugs. *Doctor. Pleading, Criminal,* Indictment or complaint. *Error,* Whether error harmful.

At the trial of indictments for violations of narcotic drug laws and regulations, evidence that a police undercover agent on numerous occasions requested drugs of the defendant, a licensed physician, and was given them, together with evidence that the defendant was willing rather than reluctant to coöperate in the criminal conduct solicited by the undercover agent without massive or offensive inducement by him, left it for the jury to determine,

following the judge's instructions on the law of entrapment to which the defendant took no exception, whether the undercover agent led an innocent person into criminal acts which she otherwise would not have committed or whether she was predisposed to commit the crimes, and there was no error in denial of a motion by her for directed verdicts of not guilty based on entrapment. [650–653]

Where the defence of entrapment is raised in a criminal case by the introduction of some evidence of inducement by an agent of the Commonwealth or one acting at his direction, the burden rests upon the Commonwealth to show that it engaged in no conduct that was offensive per se and to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime, which may be shown by proof of the defendant's reputation for the commission of similar crimes, or by the conduct of the defendant as related to the indictments at issue before the jury [651–652]; but the Commonwealth has no burden to prove good cause for initiating undercover activity against the defendant [653].

There was no merit in a contention by a licensed physician that the exemption accorded to physicians in G. L. c. 94, § 187A, precludes the Department of Public Health and the Board of Registration in Pharmacy from making rules and regulations applicable to physicians and that she was entitled to directed verdicts of not guilty on indictments charging her with violation of such rules and regulations where they were not in conflict with § 187A and provided clear standards of conduct to assist physicians in their practice of medicine in good faith. [653–654]

There was no merit to a contention by the defendant that she was entitled to directed verdicts of not guilty on indictments charging violations of narcotic drug statutes on the theory that the evidence used by the Commonwealth was illegally obtained and therefore inadmissible in that an undercover agent gained access to the defendant's premises by lies and deceit and participated himself in criminal violation of the statutes when he procured the evidence. [654–655]

At the trial of a licensed physician on indictments charging her with violations of narcotic drug statutes and regulations, where the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant had not acted in good faith in giving drugs to an undercover agent and that the amount of drugs she dispensed was excessive either in quality or in strength, the Commonwealth was not required to proffer expert testimony on such issues; the defendant's own judgment as a physician on such matters was open to question; and she was not entitled to directed verdicts of not guilty where there was extensive evidence from the defendant's own conduct and statements which warranted the jury's reaching the conclusions which the Commonwealth was required to prove. [656–657]

At the trial of a licensed physician on various indictments relating to narcotic drugs, the defendant was entitled to directed verdicts of not guilty as to indictments that charged her with possession of certain harmful drugs and narcotics since G. L. c. 94, § 187B, and G. L. c. 94, § 205, relating to possession, expressly exempt a registered physician from their application. [657]

Where one indictment charged the defendant with unlawfully dispens-
ing a narcotic drug to an undercover agent and a second indict-
ment charged the defendant with unlawfully furnishing the same
drug to the same agent on the same day, the two indictments were
repetitious as they charged the same crime arising out of a single
incident and a single act of the defendant and accordingly the de-
fendant was entitled to a directed verdict as to one of the two
indictments. [657–658]

At the trial of the defendant on indictments charging violations of
narcotic drug statutes and regulations, admission in evidence of an
undercover agent's testimony that a number of drug users and
pushers had mentioned the defendant's name was proper for the
limited purpose of showing that the eventual inducement by the
police of drug transactions with the defendant was not offensive
since good cause existed for undercover activity by the police
against the defendant [658–659]; but such testimony could not be
used on the issue of the defendant's predisposition to crime or
on the defendant's alleged criminal activity as charged in the
indictments [659].

Although only one of the thirteen indictments against a defendant
charged her with unlawful prescribing of drugs, there was no
error in the admission of substantial evidence concerning pre-
scriptions for various drugs given by the defendant to an under-
cover agent which were not the subject of indictments where the
defendant's conduct and statements concerning the drugs pre-
scribed were material on the issue, raised by the defendant's claim
of entrapment, of her predisposition toward the crimes alleged in
the indictments and on the issues whether she acted in good faith
in furnishing harmful drugs and whether the harmful drugs fur-
nished were in excessive amount. [659–660]

At the trial of a physician on indictments charging her with viola-
tions of various narcotic drug laws and regulations, admission in
evidence of testimony by an undercover agent that he asked the
defendant whether she performed abortions and that she said she
did not do them herself was not prejudicial where there was sub-
stantial, lengthy, and convincing evidence of the defendant's guilt
and no reasonable possibility that the evidence concerning abortions
contributed to her convictions. [660–661]

THIRTEEN INDICTMENTS found and returned in the
Superior Court on March 3, 1971.

Motions to suppress were heard by *Smith*, J., and the
cases were tried before him.

*Edward F. Harrington* (*Antonio R. Luongo, Jr.*, with
him) for the defendant.

*Guy Volterra*, Assistant District Attorney (*Philip A.
Rollins*, District Attorney, with him) for the Common-
wealth.

HENNESSEY, J.   At a trial subject to G. L. c. 278,

§§ 33A–33G, the defendant, a licensed physician in Massachusetts, was convicted on thirteen indictments charging her with violations of various narcotic drug statutes and regulations.[1] She was sentenced, under an unusual disposition, to consecutive one year terms in the house of correction on each of six indictments (36501, 36502, 36503, 36505, 36506, 36511). The other seven indictments were placed on file. The defendant assigns as error the refusal of the judge to direct verdicts of not guilty on all indictments and further maintains that the admission of certain evidence was error.

The jury were warranted in finding the following facts: Roland Garrison, an undercover agent, was assigned to conduct an investigation into illegal narcotic drug traffic in the Fall River and Somerset areas in the late fall and early winter of 1970–1971. During the course of his investigation he made numerous illegal purchases of narcotic drugs. During this same period of time, he had a number of conversations with certain individuals, known to him as drug users and pushers, during which conversations the defendant's name was mentioned. As a result of this information, Garrison, posing as a patient, went to the defendant's medical office in Somerset. His admitted purpose in seeking out the defendant was to obtain evidence to be used against her in prosecution for violations of the narcotic drug laws.

Garrison's first visit to the defendant's office was on Tuesday, December 1, 1970. He was attired in an olive drab jacket and blue jeans and had long hair, and a beard. He gave her a false name and address and represented to her that he was then unemployed. He told her that he had taken a drug known as mescaline on the previous Saturday and that he was still suffering from the drug's

---

[1] The indictments involved violations of G. L. c. 94, §§ 187A, 187B, dealing with "harmful drugs," and G. L. c. 94, §§ 197, 198, 200, 205, 217, concerning "narcotic drugs." These provisions have been repealed and replaced by the "Controlled Substances Act," G. L. c. 94C, inserted by St. 1971, c. 1071, § 1. The new statute including the section repealing the "harmful" and "narcotic" drug sections becomes effective July 1, 1972. St. 1972, c. 2. *Commonwealth* v. *Yee, ante,* 533.

afteraffects.   He told her that he was nervous and had trouble sleeping.   The two then discussed the general effects of mescaline and other drugs.   The defendant told Garrison that she had opium and hashish in her home. She gave Garrison a glass vial containing stelazine and told him that the stelazine was for his nerves.   As for his sleeping, she asked Garrison if he preferred nembutal or seconal to which he replied that he preferred the latter because he "had done them before."   At this, the defendant gave Garrison a prescription for seconal.

During their conversations, the defendant complained to Garrison that she was being harassed by a neighbor and inquired if he could do anything about it.   Garrison told her that he "would see what . . . [he] could do." Prior to leaving the office, Garrison told the defendant that because of the late hour it was unlikely that any drug stores would be open and asked her if she could give him anything until morning.   She gave him eighteen red capsules which were wrapped in unlabeled "Saran Wrap."   The capsules were later identified as containing a derivative of barbituric acid.   The defendant then stated that she preferred to have Garrison fill the prescription in Brockton rather than in Fall River because they didn't "want to ruin a good thing."   The defendant charged Garrison $1 for the prescription since he was "going to do something for . . . [her]."

Garrison returned to the defendant's office on December 8, 1970, and told her that he had given to his friends the pills that he had received on his last visit, that he had no pills left and that he did not want to return to the same drug store within such a short period of time.   Upon request from Garrison, the defendant gave him another prescription.   She also asked him if he wanted some "ups" and, upon receiving an affirmative answer, gave him twenty-nine yellow tablets and twenty-nine black and clear capsules.   The drugs, later identified as dexadrine and other amphetamine derivatives, were wrapped in unlabeled "Saran Wrap."

A third visit took place at the defendant's office on

December 15, 1970. During this visit the defendant told Garrison that she had recently come into possession of some cocaine. Upon request by Garrison, the defendant gave him a prescription for numorphan. She told him that the presence of severe migraine headaches was a good reason for prescribing the drug and told him to have the prescription filled out of town. There was evidence that numorphan is not prescribed for headaches. During this visit the defendant also gave Garrison another prescription for seconal.

Garrison returned to the defendant's office on December 23, 1970. On this occasion Garrison asked the defendant for another seconal prescription which the defendant gave him. They also discussed the question of whether it was possible to "shoot up" barbiturates. The defendant asked Garrison if he took heroin by injecting it and, upon receiving an affirmative reply, supplied him with two syringes and needles. On December 29, 1970, Garrison again visited the defendant's office and was given another prescription for seconal. The defendant also told Garrison to come by the following week because she would have "something nice" for him.

On January 5, 1971, Garrison went to the defendant's office where the defendant told Garrison that she had a couple of bags of cocaine for him. She told him that the bags were at her home and instructed him to wait until the office closed. Later that evening, the two discussed the various methods of using cocaine. The defendant told Garrison that she preferred LSD to marihuana or mescaline and that she had some marihuana at home. The defendant then suggested that the two go to her home to get the cocaine for him. Prior to leaving, the defendant gave Garrison twelve capsules, not labeled, and later identified as derivatives of barbituric acid, and said, "These are a few from my private supply, because you are my friend." Garrison was then instructed to drive his own car to the defendant's house. The defendant met him there, entered her house and returned with a quantity of cocaine which she gave to Garrison.

At no time during any of Garrison's visits with the defendant did she conduct a physical examination or take a medical history from him. A search of the defendant's house, on January 11, 1971, pursuant to a valid warrant, produced a quantity of marihuana and other drugs, including amphetamine derivatives, together with over 100 disposable syringes.

On the basis of the above facts, the defendant was indicted and found guilty on thirteen indictments as follows: (1) six indictments (36501, 36502, 36503, 36505, 36506, 36511) concerning delivery of harmful drugs without proper labeling and in excessive amounts and not in good faith in violation of G. L. c. 94, § 187A, and the rules and regulations of the Department of Public Health and the Board of Registration in Pharmacy; (2) one indictment (36504) for unlawful delivery of hypodermic needles and syringes in violation of G. L. c. 94, § 211; (3) three indictments (36507, 36508, 36509) for unlawful possession of narcotic drugs in violation of G. L. c. 94, §§ 198, 205, 187B; (4) two indictments (36510, 36513) for unlawfully dispensing and furnishing the narcotic drug cocaine in violation, respectively, of G. L. c. 94, § 200, and G. L. c. 94, § 217; and (5) one indictment (36512) for unlawful prescribing of a narcotic drug not in good faith and for other than pain or disease in violation of G. L. c. 94, § 200.

1. The defendant argues the defence of entrapment. The judge charged the jury on this issue, and, since no exceptions were taken to the charge, it is apparent that the instructions were deemed by the defendant to be satisfactory, and it is also apparent that the jury found no entrapment. However, the defendant now urges that the judge should have directed verdicts on all indictments because her defence of entrapment has been established as matter of law. There was no error.

The doctrine of entrapment has not been much discussed in Massachusetts law. See *Commonwealth* v. *DeLacey*, 271 Mass. 327, 331–332. In fact, only recently have we recognized it as an established part of our jurisprudence.

*Commonwealth* v. *Harvard,* 356 Mass. 452, 459. In the
*Harvard* case, we observed that while courts differ some-
what as to the details and rationale of the doctrine (see
e.g. *Sorrells* v. *United States,* 287 U. S. 435, *Sherman* v.
*United States,* 356 U. S. 369), the general principle has
been well stated by Professor Perkins at p. 921 of his
Criminal Law: "Entrapment, so-called, is a relatively
simple and very desirable concept . . . .. It is socially
desirable for criminals to be apprehended and brought to
justice and there is nothing whatever wrong or out of
place in setting traps to catch those bent on crime; what
the state cannot tolerate is having its officers, who are
charged with the duty of enforcing the law, instigate
crime by implanting criminal ideas in innocent minds and
thereby bringing about offenses that otherwise would
never have been perpetrated." See Am. Law Inst., Model
Penal Code, § 2.10, and Comment (Tent. draft No. 9,
1959).

It has been stated that entrapment occurs only when
criminal conduct is "the product of the creative activity"
of government officials. *Sorrells* v. *United States,* 287
U. S. 435, 451. However, no entrapment exists "if the
accused is ready and willing to commit the crime when-
ever the opportunity might be afforded." *United States*
v. *Groessel,* 440 F. 2d 602, 605 (5th Cir.); cert. den. 403
U. S. 933. The fact that government agents merely fur-
nish opportunities or facilities for committing the offence
does not defeat prosecution. Artifice and stratagem may
be employed to catch those engaged in criminal enter-
prises. *Commonwealth* v. *Harvard,* 356 Mass. 452, 459.
*Sorrells* v. *United States,* 287 U. S. 435, 441. *Osborn* v.
*United States,* 385 U. S. 323, 331–332. In short, in de-
termining whether entrapment has been established "a
line must be drawn between the trap for the unwary in-
nocent and the trap for the unwary criminal." *Sherman*
v. *United States,* 356 U. S. 369, 372.

The defence of entrapment is appropriately raised, as
it was in the case before us, by the introduction of some
evidence of inducement by a government agent or one

acting at his direction. Mere evidence of solicitation is not enough to show inducement, but little more than solicitation is required to raise the issue. "[A]ny evidence . . . that the government agents went beyond a simple request and pleaded or argued with the defendant, should be enough." *Kadis* v. *United States*, 373 F. 2d 370, 374 (1st Cir.). When evidence of inducement has been entered, the burden rests upon the Commonwealth to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime.

Predisposition may be shown by, among other things, proof of the defendant's prior conviction of similar crimes (*Whiting* v. *United States*, 296 F. 2d 512, 516 [1st Cir.]), and by competent proof of the reputation of the defendant for the commission of similar crimes. The jury may also properly consider the conduct of the defendant as related to the indictments at issue before the jury, and predisposition may warrantably be found upon this kind of evidence alone, if the evidence is of sufficient significance.

In the case before us the Commonwealth must rely for proof of the defendant's predisposition almost exclusively upon the words and conduct of the defendant during her meetings with Garrison. The only evidence offered by the Commonwealth on the issue of prior criminal involvement (that narcotic users and pushers "mentioned" her name) is of little probative force.

The rule is that "once government inducement has been shown there are two issues. The government should establish that it engaged in no conduct that was shocking or offensive per se, and that the defendant was not in fact, corrupted by the inducement." *Whiting* v. *United States*, 321 F. 2d 72, 76 (1st Cir.).

We conclude that, solely from Garrison's detailed evidence concerning his several encounters with the defendant, the jury were warranted in deciding that predisposition of the defendant had been proved beyond a reasonable doubt. We further conclude that the inducement exercised was not so "shocking or offensive per se" as to require that verdicts be directed for the defendant.

*Waker* v. *United States,* 344 F. 2d 795, 796 (1st Cir.). *Commonwealth* v. *Harvard,* 356 Mass. 452, 460. Consequently, the defendant's motions for directed verdicts premised upon entrapment were properly denied. There is no necessity to analyze the copious evidence in detail. It is sufficient to observe that the testimony of Garrison, if believed, showed that the defendant, without massive or offensive inducement by Garrison, was from the very beginning willing, rather than reluctant, to coöperate in the criminal conduct.

2. The defendant also argues that verdicts should have been directed for her because there was no evidence that the police had a sufficient basis for initiating undercover activity against her. She concedes that the Commonwealth's burden here does not reach the level of probable cause in its usual sense, but she urges that there must be at least a showing of a rational basis, or good cause, for the intrusion upon her. We disagree. Although the facts relating to the initiation of the investigation may well, if otherwise competent, be admissible as material to the issue whether the inducement was shocking or offensive, the Commonwealth has no burden to prove good cause. *Whiting* v. *United States,* 321 F. 2d 72, 76–77 (1st Cir.). See *Commonwealth* v. *Harvard,* 356 Mass. 452, 460.

3. The judge properly refused to direct verdicts of not guilty on the six indictments (36501, 36502, 36503, 36505, 36506 and 36511) which charged violation of the rules and regulations of the Department of Public Health and the Board of Registration in Pharmacy. As to these six indictments, it can fairly be said that they depend at least in part upon the rules and regulations as the source of the charges against the defendant, particularly as to allegations concerning "labeling" and "excessive amounts." The defendant contends that G. L. c. 94, § 187A, does not permit the Department of Public Health and the Board of Registration in Pharmacy to enact jointly reasonable rules and regulations governing the sale, use, dispensing, and giving away of harmful drugs, since she as a licensed physician was exempted from be-

ing subject to this rule making power of these administrative bodies, as the Legislature by enacting G. L. c. 94, § 187A, specifically exempted physicians from the penal sanctions of the harmful drug laws.

That statute (§ 187A, as amended) provides that "no person shall sell or offer for sale at retail or dispense or give away any harmful drug . . ." but it further provides, in part, that "[a] physician . . . may personally administer any harmful drug at such time and under such circumstances as he, in good faith and in the legitimate practice of medicine, believes to be necessary for the alleviation of pain and suffering or for the treatment or alleviation of disease." Additionally, the statute provides that "[t]he department of public health . . . and the board of registration in pharmacy acting jointly may make such rules and regulations as they deem necessary for the proper enforcement" of § 187A.

The rules and regulations in the case before us consist merely of definitions of such terms contained in the statutes as "personally administer," "administer," "immediate treatment," and "dispense." Rules and regulations are not valid if they are in conflict with the authorizing statute. *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare*, 326 Mass. 121, 124, and cases cited. The rules and regulations before us are not in conflict, but are clearly consistent with the statute. They are of assistance to physicians by providing clear standards of conduct in furtherance of their practice of medicine in good faith. Cf. *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521. The regulations are clear and specific, and without ambiguity.

4. The defendant asserts that the judge erred in declining to direct verdicts of not guilty as to certain indictments (36503, 36506, 36510, 36511 and 36512) because evidence used by the Commonwealth was obtained illegally and was therefore inadmissible. There was no error. The defendant had filed a motion to suppress the evidence, but at the time of trial elected not to have the motion heard. This constituted a waiver. *Common-*

*wealth* v. *Cooper*, 356 Mass. 74, 79. There is serious doubt as to the correctness of her reasoning contending that the admission of the evidence now entitles her to directed verdicts after the waiver of the motion to suppress. We need not consider that question, however, since there is no merit to the defendant's reasoning that the evidence was inadmissible.

The defendant urges that all of the drugs and prescriptions which were received in evidence were inadmissible because Garrison procured them, by lies and deceit, in her office. Her reasoning (citing *Mapp* v. *Ohio*, 367 U. S. 643, and *Bumper* v. *North Carolina*, 391 U. S. 543) is that where entry to a defendant's premises is gained by lies, the defendant's consent to the entry is not voluntary and any evidence obtained pursuant to such entry is illegally obtained and therefore not admissible. This argument is without substance. "If the type of identity misrepresentation made in this case is to be outlawed generally the whole structure of law enforcement involving government decoys must collapse. Even if such misrepresentation merely becomes unlawful if it takes place in connection with an entry into a defendant's premises, the result would be almost as serious. All sales to possible decoys could be insulated by being made in the seller's private domain . . .. We cannot accept such a view." *Whiting* v. *United States*, 321 F. 2d 72, 77–78 (1st Cir.). See *Lopez* v. *United States*, 373 U. S. 427, 438.

There is likewise no merit to the defendant's contention that this evidence is not admissible because Garrison was himself participating in criminal violation of the statutes concerning harmful drugs and narcotics when he procured the evidence. Such reasoning would, if carried to its ultimate conclusion, prevent all undercover narcotic investigations. Certain crimes, of which the narcotics traffic furnishes a prime example, are committed in secret in such circumstances that perpetrators might never be discovered if government representatives were not permitted to participate to some extent. *Whiting* v. *United States, supra,* at 76.

5. The defendant asserts as to certain indictments that the Commonwealth failed to sustain its burden of proving beyond a reasonable doubt the two essential elements of the crimes charged in these particular indictments, namely: (1) that the defendant did not act in good faith; and (2) that the amount of drugs dispensed was excessive either in quantity or in strength. She further contends that the Commonwealth was required to proffer expert testimony as to these issues (see *Bouffard* v. *Canby*, 292 Mass. 305) and that she was therefore entitled to directed verdicts of not guilty as to these indictments.

There was no error. The two issues of good faith and excessive dispensing of drugs were, on the entire evidence in this case, questions of fact for the jury's determination. Although the defendant was the only expert who testified as to these issues, the jury could choose to reject her testimony. *Commonwealth* v. *Costa*, 360 Mass. 177, 183. We recognize that the professional judgments of a physician, exercised in good faith, may impel him to dispense drugs to a patient. That patient may even be a drug dependent person, or a drug addict. Nevertheless, the exercise of the physician's discretion in such matters is not conclusive or beyond question. *Commonwealth* v. *Noble*, 230 Mass. 83, 87–88.[2] Furthermore, the totality of the evidence, even in the absence of expert testimony,

---

[2] *Commonwealth* v. *Noble*, *supra*, at pp. 87–88, has the following significant language: "While the question whether the drug is or is not obviously needed for therapeutic purposes in a given case is a question for the attending physician and he is not to be held liable for a violation of the statute if he acts in good faith, it does not follow that his judgment in the matter is conclusive and cannot be reviewed or inquired into in a prosecution for an alleged violation of the statute. . . . The question whether the defendant exercised his honest professional judgment and acted in good faith or whether he intentionally violated the statute, was a question of fact for the jury to be determined by them as men of practical sense and sound judgment. To hold that the honesty of purpose of the defendant — whether in good faith he was of opinion that the drugs were obviously needed, — cannot be inquired into when he is charged with a violation of the statute, would be to defeat its manifest purpose and leave the community without adequate protection from the acts of unscrupulous and dishonest physicians."

may serve to sustain the Commonwealth's burden of proof.

The extensive evidence in this case was sufficient to warrant the jury in concluding that the defendant did not act in good faith in her dispensing of drugs to Garrison, and that the dispensing by the defendant to Garrison of any slightest quantity of drugs or narcotics was excessive, unlawful, and impelled by no legitimate medical purpose.

From the defendant's conduct and statements, the jury's common knowledge, unassisted by expert testimony, could warrantably lead them to the conclusions which the Commonwealth was required to prove.

6. The defendant correctly contends that verdicts of not guilty should have been directed as to three indictments (36507, 36508 and 36509) that charged her with unlawful possession of certain harmful drugs and narcotics, viz.: the narcotic drug cocaine in violation of G. L. c. 94, § 198; the narcotic drug marihuana in violation of G. L. c. 94, § 205; and harmful drugs in the form of amphetamines in violation of G. L. c. 94, § 187B.

The statutes provide specific exception for physicians, as to possession of both harmful drugs and narcotics. General Laws c. 94, § 187B, provides, in pertinent part: "Whoever, not being a . . . registered physician . . . is found in possession . . . [of any harmful drug] shall be punished . . .." General Laws, c. 94, § 205, provides in pertinent part: "Whoever, not being a . . . physician . . . is in possession of any narcotic drug . . . shall be punished . . .."

The defendant was admittedly a registered physician at all material times. On the evidence in the case before us, directed verdicts of not guilty were required as to these three indictments alleging unlawful possession. We do not intimate that a physician may never be shown, by appropriate evidence, to have unlawful possession of harmful drugs and narcotics.

7. We conclude that the defendant's motion for a directed verdict of not guilty as to indictment 36510 should

have been allowed. However, her motion for a directed verdict of not guilty as to indictment 36513 was properly denied. Indictment 36510 charged that the defendant on January 5, 1971, unlawfully dispensed the narcotic drug cocaine to Roland Garrison not in good faith and for other than pain or disease in violation of G. L. c. 94, § 200. Indictment 36513 charged that the defendant, on January 5, 1971, unlawfully furnished the narcotic drug cocaine in violation of G. L. c. 94, § 217. Each of these indictments sufficiently charged a crime, even though indictment 36510 doubtfully bases its charge upon § 200, since all but the most basic language of the indictment is treated as surplusage, by statute. G. L. c. 277, § 38. However, the two indictments are repetitious, charging the same crime arising out of a single incident and a single act of the defendant. The defendant was entitled to a directed verdict of not guilty as to one of the two indictments, and we deem it appropriate that indictment 36513 should survive since it aptly relies upon § 217.

8. The defendant argues that it was error for the judge to admit, over her objection and exception, the testimony of Garrison that a number of users and pushers had mentioned her name. She contends that this evidence was hearsay of the most prejudicial kind.[3] There was no error.

---

[3] The defendant's exception, although it is without merit in the circumstances of this case, suggests a substantial difficulty. Proof on the issue of good cause, or on the issue of predisposition, however offered, may deal with the defendant's prior way of life. Such evidence is not ordinarily consistent with the objective of affording the defendant a fair trial upon the indictments at issue. These considerations, among others, impelled Mr. Justice Roberts in his concurring opinion in *Sorrells* v. *United States*, 287 U. S. 435, 457, to suggest that the issues, including all questions of fact, relating to entrapment should be for the trial judge. See also *Sherman* v. *United States*, 356 U. S. 369, 385. Am. Law Inst., Model Penal Code, § 2.13 (Proposed Official Draft, 1962). We agree with the great weight of authority that, for compelling reasons, including constitutional considerations, the entrapment issue should be heard and decided by the jury. *Sherman* v. *United States*, 356 U. S. 369, 377. Certainly, however, a preliminary hearing before the judge, with the jury excluded, is advisable as to this area of evidence. At the very least, such a hearing will afford opportunity for the judge to make considered prior rulings as to the manner and scope of presentation of the evidence to the jury. Further, it will

The testimony was admissible for the limited purpose of showing good cause for the subsequent undercover activity of Garrison as directed against the defendant. Good cause, while not required to be shown, was material to the issue whether the inducement by the police was shocking and offensive. The statements to Garrison were, on the issue of good cause, not hearsay. The hearsay rule forbids only the testimonial use of reported statements. It does not preclude the use of such statements for other valid purposes such as, in the case before us, the state of police knowledge which impelled the approach to the defendant. *Commonwealth* v. *Monahan,* 349 Mass. 139, 168.

We agree that the statements of the pushers and users to Garrison were not admissible on the issues of the defendant's predisposition to crime, or the defendant's alleged criminal activity as charged in the indictments. On the issue of predisposition, proof of prior reputation for related criminal activity would be admissible only through testimony of a witness with personal knowledge (see *Commonwealth* v. *Tircinski,* 189 Mass. 257, 258; *Commonwealth* v. *Rubin,* 318 Mass. 587, 588), and proof of prior convictions would be admissible only under the safeguards established by the law. The defendant, upon appropriate request, was entitled to a ruling, and instructions to the jury, limiting the evidence of third party statements to their valid purpose. No such request was made. The objection was a general one. We have before us no exception to the judge's instructions to the jury or to his failure to instruct on the matter.

9. The defendant argues that she was prejudiced by the admission of evidence concerning certain prescriptions for harmful drugs given by her to Garrison. The contention is that only one (36512) of the thirteen indictments charged unlawful prescribing of drugs or narcotics

give the defendant opportunity to make an informed decision as to whether, in view of the probable prejudicial, collateral effect upon the jury of the entrapment evidence, he will waive the defence of entrapment.

distinguished from unlawful furnishing of drugs or narcotics, and that there was error in the admission of substantial evidence concerning prescriptions. She argues further that the prejudice to her was aggravated by a reference to the prescribed drugs in the charge to the jury.

The evidence was properly admitted. It showed that the defendant prescribed 470 seconal tablets between December 1 and December 29, 1970, that this was more than a six months supply at recommended dosage, and that she made various statements urging caution in filling the prescriptions. Although, with one exception, the defendant's actions in giving the prescriptions were not the subject of indictments, her conduct and statements concerning the prescriptions were material on the issue of her predisposition toward the crimes alleged in the indictments, as related to her claim of entrapment. The evidence was also material on the issues of the defendant's good faith in furnishing harmful drugs, and whether the harmful drugs she furnished to Garrison were in excessive amount.

The defendant also argues that there was prejudicial error in the admission of an answer to a question concerning abortion. Garrison had testified, under examination by the assistant district attorney, and without objection by the defence, that he had heard a male and female arguing in the doctor's house; that the defendant told him it was a young couple looking for an abortion; and that Garrison then asked the defendant how much she got for an operation like that. At that point, defence counsel interposed an objection and exception. It is not clear whether counsel was moving to strike the most recent question and answer, or whether he was seeking to forestall further questions in that line of inquiry. Thereafter, Garrison was asked by the assistant district attorney, without objection by defence counsel, "What did she say to that?" Garrison's answer was, "She replied, 'I don't do them myself. My hands are clean; but I refer them to another woman, who gets three to $400 for an

operation." There was no further objection, motion to strike, or request for instructions by defence counsel.

The failure of defence counsel to interpose appropriate objections and exceptions is dispositive of this issue. Even accepting the defendant's contention that her rights were seasonably saved, we conclude that the defendant was not so prejudiced by this evidence as to entitle her to a new trial. There was substantial, lengthy and convincing evidence of the defendant's guilt. Since there is no reasonable possibility that the evidence here in question contributed to the conviction, reversal is not required. *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 539. See *Schneble* v. *Florida*, 405 U. S. 427, 432. The better course would have been for the assistant district attorney to avoid the entire sequence of questions as not material to the proof required upon the indictments, and as having an inherent possibility of unfair prejudice to the defendant in such collateral inquiry.

10. With respect to indictments 36507, 36508, 36509, and 36510, the judgments are reversed and the verdicts are set aside. The judgments on the other nine indictments are affirmed.

*So ordered.*